UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ARTHUR HENNELLY,

      Plaintiff,      **DECISION AND ORDER**
                 **1:14-cv-00961-MAT**

 -vs-

CAROLYN W. COLVIN, Acting Commissioner
of Social Security,

      Defendant.

---

## INTRODUCTION

Represented by counsel, Arthur Hennelly ("Plaintiff") instituted this action pursuant to Titles II and XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying his application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## PROCEDURAL STATUS

On January 6, 2012, Plaintiff protectively filed an application for DIB. On January 12, 2012, Plaintiff protectively

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

-1-

filed an application for SSI. In both applications, Plaintiff alleged disability beginning April 1, 2011, due to depression, anxiety, an inability to concentrate, and attention deficit hyperactivity disorder. (T.138).[2] These claims were denied initially on March 20, 2012. (T.63-74). Plaintiff filed a written request for hearing on March 23, 2012. (T.75-76). A hearing was held before administrative law judge David S. Lewandowski ("the ALJ") on April 1, 2013, in Buffalo, New York. (See T.32-58). Plaintiff appeared with his attorney and testified. Jay Steinbrenner, an impartial vocational expert ("the VE"), also appeared and testified.

After the hearing, upon the advice of his attorney, Plaintiff amended the alleged onset date to June 15, 2011. Additionally, Plaintiff's attorney submitted a statement authored by Plaintiff's parents, which was added to the record as Exhibit 8E.

On April 24, 2013, the ALJ issued an unfavorable decision. (T.16-31). Plaintiff's request for review by the Appeals Council was denied on September 15, 2014, making the ALJ's decision the final decision of the Commissioner. (T.1-6). This timely action followed.

The parties have cross-moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. The

---

[2] Citations to "T." in parentheses refer to pages in the certified administrative transcript in this matter.

Court adopts and incorporates by reference herein the undisputed and comprehensive factual summaries contained in the parties' briefs. The record will be discussed in more detail below as necessary to the resolution of this appeal. For the reasons that follow, the Commissioner's decision is affirmed.

**THE ALJ'S DECISION**

The ALJ followed the five-step sequential evaluation procedure established by the Commissioner for adjudicating disability claims. See 20 C.F.R. §§ 404.1520, 416.920.

At step one, the ALJ found that Plaintiff meets the insured status requirements of the Act through September 30, 2013, and has not engaged in substantial gainful activity since June 15, 2011, the amended alleged onset. date.

At step two, the ALJ determined that Plaintiff has the following severe impairments: depressive disorder and generalized anxiety disorder.

At step three, the ALJ found that the severity of the Plaintiff's menial impairments, considered singly and in combination, do not meet or medically equal the criteria of Listing 12.04 (Affective Disorders) or Listing 12.06 (Anxiety Related Disorders). (T.22-23). Applying the special technique for evaluation of mental impairments, the ALJ found that Plaintiff has "mild restriction" in activities in daily living; "moderate difficulties" in social functioning; "mild difficulties" in

maintaining concentration, persistence or pace; and had experienced no episodes of decompensation of extended duration. (T.22).

Prior to proceeding to step four, the ALJ assessed Plaintiff as having the residual functional capacity ("RFC") the to perform a full range of work at all exertional levels but with the following nonexertional limitations: he is able to understand, remember and carry out simple instructions and perform simple tasks with no or limited proximity to co-workers and occasional interaction with others; and he is able to maintain a regular, simple schedule.

At step four, the ALJ determined that Plaintiff is capable of performing his past relevant work as a warehouse worker, since this work does not require the performance of work-related activities precluded by his RFC. The ALJ noted the VE's testimony that Plaintiff has past relevant work experience as a design engineer (DOT no. 003.362-010), which is skilled (SVP5), light work; structural drafter (DOT no. 005.291-014), which is skilled (SVP7), sedentary work; warehouse worker (DOT no. 922.687-058), which unskilled (SVP2), medium work; and pool maintenance (DOT no. 891.684-018), which is semi-skilled (SVP4), medium work. The VE further testified that Plaintiff would be able to perfom1 his past relevant work as a warehouse worker as it was actually performed by him, and as it is generally performed in the economy.

The ALJ proceeded to step five, although not required to, and

made alternative findings that there are other jobs existing in the national economy that he is able to perform. The ALJ noted that Plaintiff was a "younger individual" (32 years-old) on the alleged onset date, with at least a high school education and the ability to communicate in English. Transferability of job skills was immaterial to the disability determination because using the Medical-Vocational Rules ("the Grids") as a framework supported a finding that Plaintiff is not disabled, whether or not the claimant has transferable job skills.

The ALJ alternatively found that, considering Plaintiff's vocational profile and RFC in conjunction with the Medical-Vocational Guidelines ("the Grids") and the VE's testimony, Plaintiff would be able to perform representative occupations that exist in significant numbers in the national and regional economy, such as a packaging machine operator (DOT no. 920.685-078, unskilled (SVP2), medium); commercial laundry worker (DOT no. 361.685-018, unskilled (SVP2), medium); and hand picker (DOT no. 920.587-018, unskilled (SVP2), medium, but often performed as light work).

Accordingly, the ALJ found that Plaintiff has not been under a disability as defined in the Act from April 1, 2011, through the date of decision.

## SCOPE OF REVIEW

A decision that a claimant is not disabled must be affirmed if

it is supported by substantial evidence, and if the ALJ applied the correct legal standards. See 42 U.S.C. § 405(g). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the district court] will not substitute [its] judgment for that of the Commissioner." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002). This deferential standard is not applied to the Commissioner's application of the law, and the district court must independently determine whether the Commissioner's decision applied the correct legal standards in determining that the claimant was not disabled. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). Failure to apply the correct legal standards is grounds for reversal. Id. Therefore, this Court first reviews whether the applicable legal standards were correctly applied, and, if so, then considers the substantiality of the evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

## DISCUSSION

Plaintiff's contentions on appeal pertain to the ALJ's evaluation of the mental RFC assessment provided by his treating psychiatrist, Dr. Horacio Capote. Plaintiff argues that the ALJ erroneously rejected Dr. Capote's opinion "based on the raw evidence of mental status examinations from non-acceptable other sources. . . ." (Pl's Mem. at 12).

Pursuant to the Commissioner's regulations in effect at the time of the ALJ's decision, a treating source's opinion will

accorded "controlling weight" when it is "well[ ] supported by medically acceptable clinical and laboratory techniques and is not inconsistent with the other substantial [record] evidence." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2). Nevertheless, "[a] treating physician's statement that the claimant is disabled cannot itself be determinative." Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999). Rather, the Commissioner is "responsible for making the determination or decision about whether [the claimant] meet[s] the statutory definition of disability." 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1).

Here, Dr. Capote issued a mental RFC assessment on February 27, 2012. (T.200-01). Dr. Capote indicated that since July 7, 2011, due to depression and anxiety, Plaintiff has had "moderate" limitations in the ability to perform the following work-related activities: understand, remember, and carry out instructions; maintain attention and concentration; make simple decisions; interact appropriately with others; maintain basic hygiene; and function in a work setting at a consistent pace. Dr. Capote further opined that commencing July 7, 2011, Plaintiff was "very limited" in his ability to maintain socially appropriate behavior without exhibiting behavioral extremes. (T.201). Dr. Capote indicated that these limitations were expected to last for 12 months or more. (T.201).

The ALJ found that "the objective record does not support" Dr.

Capote's opinion. (T.25). Where the ALJ does not accord controlling weight to a treating source's opinion, the ALJ must consider a number of factors, including the length and nature of the treating source's relationship with the claimant, the extent to which the medical evidence supports the treating source's opinion, whether the treating source is a specialist in the area on which he or she is opining, the consistency of the treating source's opinion with the rest of the record, and any other factors "which tend to support or contradict the opinion." 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii) & (d)(3)-(6), 416.927(d)(2)(i)-(ii) & (d)(3)-(5); see also, e.g., Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004) ("Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.") (internal citation omitted). Although Dr. Capote had a treating relationship with Plaintiff and was a specialist in the area of psychiatry well qualified to opine on Plaintiff's mental impairments, the Court finds, as discussed below, that the ALJ did not misapply the treating physician rule in weighing Dr. Capote's opinion and declining to give it controlling weight.

The ALJ at the outset noted that "objective record" did not

support the extreme limitations assigned by Dr. Capote because, "except for diminished concentration on one occasion, (Exhibit 1F, page 5 [(T.191)]), and tenseness on another (Exhibit 4D,[3] page 2), the mental status examinations have been within normal limits (Exhibits 2F, page 2; 8F, page 10; 9F, page 4; and 11F, pages 3, 6 and 9)." (T.25). Notably, at Plaintiff's initial visit in July of 2011, which coincides with the date, on which Dr. Capote opined that the restrictive limitations he placed on Plaintiff began, Dr. Capote assessed only "mild" symptoms relating to Plaintiff's depression and anxiety. (T.191-92). On that date, Plaintiff reported that he was "actually doing fairly well and [was] stable ever since beginning treatment with Deplin."[4] (T.190). Although Plaintiff "state[d] he [was] probably not exactly at remission yet, but doing pretty well." (Id.). At Plaintiff's next appointment with Dr. Capote's office, DENT Neurologic Institute, on January 12, 2012, Physician's Assistant Andrea Laudisio ("PA Laudisio") noted that Plaintiff was "doing well overall," though he had "trouble with his concentration and energy[,]" and "question[ed] [her about] the possibility of disability." (T.230). PA Laudisio indicated that Plaintiff had not had any of the laboratory tests done as requested

---

[3] This is an incorrect citation by the ALJ. Exhibit 4D is not a treatment record from Dr. Capote. Page 2 of Exhibit 4F is part of the consultative psychologist's report, and does include a note that Plaintiff's affect was "[t]ense, but appropriate to speech and thought content." (T.203).

[4] Deplin (generic name: L-methylfolate) "is a medical food. It works by providing the body with folate." https://www.drugs.com/cdi/deplin.html (last accessed June 27, 2017).

at his initial visit, since "[h]e did go back to work at one point. . . ." (T.230). Plaintiff's medications and dosage were not changed at the conclusion of that appointment. The ALJ appropriately considered the inconsistency of Dr. Capote's opinion with Plaintiff's own statements during treatment and treatment notes from Dr. Capote and his physician's assistant.

The ALJ also reasonably found that Dr. Capote's opinion was inconsistent with the rest of the record. For instance, the ALJ noted that "[t]he objective record shows that [Plaintiff] consistently reported doing well with Deplin." (T.24 (citing Ex. 1F, pp. 1 & 4; Ex. 8F, pp. 3, 6 & 9; Ex. 11F, pp. 2, 5 & 8; Ex. 12F, p. 2)).

Plaintiff claims that contrary to the ALJ's finding, the record did not show Plaintiff's sustained improvement with regard to his mental impairments. (Pl's Mem. at 13). However, review of the record does indicate improvement over time. In July of 2011, Plaintiff informed Dr. Capote that he was doing fairly well and was stable since beginning Deplin. (T.190). After Dr. Capote slightly increased Deplin dosage (T.192), he noted on February 27, 2012—the same day he issued his restrictive RFC assessment—that Plaintiff had experienced "some improvement" although "a lot still needs to be done." (T.234). On April 29, 2012, Plaintiff reported to Physician's Assistant Gregory Groth ("PA Groth") of DENT Neurologic Institute, that "[f]ortunately, he continues to benefit from Deplin

any [sic] cognitive and mood aspect. Gabapentin 100 mg, 4 at h.s. [in the evening] is decreasing anxiety though he still has a baseline which uncomfortable." (T.237). Plaintiff said he "look[ed] forward to returning to work in the next month[,]" had a good appetite, his weight was stable, he had no difficulty with sleep, and woke up "feeling restored." (Id.). On January 24, 2013, at a 4-month follow-up appointment with PA Groth, Plaintiff had "relaxed" body language, made eye contact, spoke "spontaneously with free flowing expressions." (T.257). Plaintiff's concentration was "good" and his affect was "appropriate." (Id.). Plaintiff reported that he was looking for gainful employment, and "trie[d] to get out with friends, though he doesn't always feel comfortable." (T.256). Significantly, Plaintiff "indicate[d] virtually no significant elements of depression and [was] only a little anxious when trying to concentrate, or around large crowds of people." (Id.).

The ALJ also appropriately noted that Dr. Capote's opinion was at odds with the opinion of consultative examiner Susan Jensen, Ph.D., rendered on March 7, 2012. (T.202-05). During her clinical examination, Dr. Jensen observed that Plaintiff's manner of relating, social skills, and overall presentation were adequate, and this thought processes were coherent and goal-directed. Although his affect was tense, it was appropriate relative to his speech and thought content. Plaintiff's mood was neutral, his sensorium was clear, and he was oriented in all three spheres. Dr.

Jensen also noted that Plaintiff's attention and concentration were intact, as were his memory skills; she opined that his insight and judgment appeared to be good. Based on the results of her clinical examination, Dr. Jensen opined that Plaintiff "can follow and understand simple directions and instructions, perform simple tasks independently, maintain concentration and attention, learn new simple tasks, perform complex tasks independently, and make appropriate decisions within normal limits." (T.204) Dr. Jensen noted that Plaintiff's ability to maintain a regular schedule, relate adequately with others, and appropriately deal with stress "may be mildly impaired at this point because of ongoing symptoms of his depression." (Id.) Dr. Jensen stated that "[t]he results of the present evaluation appear[ed] to be consistent with psychiatric issues that in themselves do not significantly interfere with [Plaintiff]'s ability to function on a daily basis." (T.205). She opined that Plaintiff's prognosis was "[g]ood, given [his] current level of functioning." (Id.).

The ALJ assigned "significant weight" to consultative psychologist Dr. Jensen's opinion, "given her programmatic expertise and consistency with her evaluation of [Plaintiff] and with the record." (T.25). "[A]n ALJ may give greater weight to a consultative examiner's opinion than a treating physician's opinion if the consultative examiner's conclusions are more consistent with the underlying medical evidence." Suarez v. Colvin, 102 F. Supp.3d

-12-

552, 577–78 (S.D.N.Y. 2015) (citing Rosier v. Colvin, 586 Fed. Appx. 756, 758 (2d Cir. 2014) (summary order) (ALJ properly relied on evaluations by a consultative examiner to reject treating physician's opinion where other substantial evidence in the record was inconsistent with treating physician's opinion); Manning v. Colvin, No. 13-CV-497-JTC, 2014 WL 5308189, at *8–9 (W.D.N.Y. Oct. 16, 2014) (ALJ properly gave little weight to the treating physician's opinion and "'great weight'" to the consultative examiner's prognosis because the consultative examiner's opinion was more consistent with the medical evidence of record); other citations omitted). The ALJ's according of significant weight to Dr. Jensen's opinion is supported by substantial evidence, which includes, as discussed above, much of the same evidence relied on to discount the probative value of Dr. Capote's opinion. See Frawley v. Colvin, No. 5:13-CV-1567 (LEK/CFH), 2014 WL 6810661 at *5–7, *9–10 (N.D.N.Y. Dec. 2, 2014) (ALJ's decision to give great weight to the opinion of a consultative psychological examiner was supported by substantial evidence because the opinion was consistent with the same medical evidence relied on by the ALJ to reject the treating psychologist's opinion; stating that "[t]he ALJ's decision to give great weight to Dr. Shapiro's medical opinion is supported by substantial evidence. . . . Frawley had noted improvements with consistent counseling and medication compliance. Frawley also had consistent GAF scores of 65 from 2009

through 2012. The opinions of consultative examiners like Dr. Shapiro may constitute substantial evidence where, as here, it is supported by the medical evidence in the record").

Plaintiff also argues that the ALJ should have assigned controlling weight to Dr. Capote's opinion because Dr. John Sauret, his primary care physician, did not question it. Plaintiff is apparently referring to the fact that when he presented to Dr. Sauret with mild depressive symptoms, Dr. Sauret sent him to a mental health specialist—Dr. Capote. This argument is not based on any legal authority. Indeed, the Court can find none to support the proposition that a physician's referral of a patient to a specialist, without more, constitutes an endorsement of any subsequent opinion issued by that specialist regarding the patient.

**CONCLUSION**

For the foregoing reasons, the Court finds that the Commissioner's decision is supported by substantial evidence and is not the product of legal error. Therefore, the Court affirms the Commissioner's decision denying benefits, grants Defendant's motion for judgment on the pleadings, and denies Plaintiff's motion for judgment on the pleadings. The Clerk of Court is directed to close this case.

**SO ORDERED.**                    S/ Michael A. Telesca

_____
    HON. MICHAEL A. TELESCA
    United States District Judge

Dated:   June 28, 2017
         Rochester, New York.